DONALDSON and Wife *v.* WEST BRANCH BANK.

IN ERROR.

A husband who comes into court as a lien creditor, for his wife's legacy charged on land which has been converted into money by a judicial sale, so far makes it his own by demanding it, as to let in a set-off of his proper debt; but not to disappoint her right of survivorship in the event of his death before distribution.

A collusive delivering up of the securities for such a debt, being assets in the hands of an executor who is also the residuary legatee, but on the verge of insolvency, is not only a devastavit as to the testator's legatees and creditors, but a fraud, by the 13 Eliz., on the executor's own creditors; and either class may treat the securities as subsisting evidences of debt in the hands of the debtor; but whether the delivery were collusive, or for what was supposed to be a fair equivalent, is a question of fact, not of law.

And it is proper for the jury, if they find it collusive, to assess the value of the property given in exchange by the debtor, that he may have credit for it in the final decree.

ERROR to the Common Pleas of Union county.

William Donaldson and Anna ʹMaria, his wife, against the West Branch Bank and the Bank of Pennsylvania.

This was an issue directed by the Court of Common Pleas of Union county, and the question to be settled under it was, whether the legacy claimed by the plaintiff, under the last will and testament of John

Cowden, was paid, or whether the executor, John H. Cowden, had been guilty of a devastavit, to which William Donaldson, now seeking to recover the legacy, was a party.

John Cowden, in and by his last will and testament, which was proved on the 16th day of January, 1837, amongst other devises and bequests to his children, grandchildren, &c., devised and bequeathed to his daughter, Anna Maria, the wife of William Donaldson, as follows:

"To my daughter, Anna Maria, her heirs and assigns, I bequeath all my plantation on the North Branch, about five miles above Northumberland; my out-lot at Danville; a small house and lot in Mooresburg; $3000; and also, my claim and demand against George Grant, of a mortgage entered against said Grant in Schuylkill county."

The facts and circumstances of the case are so fully and clearly detailed in the charge of the court below to the jury, that it is substituted and published here for the usual statement. The following points, submitted by the counsel of the plaintiffs to the court for their instruction to the jury, will be sufficient to present the questions argued and determined in this court.

1. That the estate of the testator, John Cowden, being entirely solvent, leaving a large surplus to the residuary devisee after payment of all the debts and legacies against it, the residuary devisee might transfer Donaldson's note, though for a consideration less in value than the amount of the note, without being guilty of a devastavit as executor, and equity would neither charge the note against the legacy to the wife of William Donaldson, against the intention of the parties, nor follow it into Donaldson's hands, in favour of the creditors of the residuary devisee.

2. That the assignments of judgments on the docket of Columbia county and Northumberland county, by John H. Cowden to William Donaldson, does not constitute a devastavit, when no injury has thereby resulted to any creditor or legatee of the estate, and no complaint is made by them; nor would equity force a credit of such assignments against the legacy of the wife of Donaldson, at the instance of the creditors of John H. Cowden.

3. That John H. Cowden being residuary devisee, as well as executor of the estate, and the real estate being amply sufficient for payment of all the debts and legacies, the residuary devisee and executor could elect to apply the real estate to the payment of debts and legacies, and the personal to his own purposes, or could dispose of the personal at his pleasure, where not opposed by creditors or legatees of the estate.

4. That John H. Cowden was the sole judge of the adequacy of the consideration inducing the transfer of the securities referred to, as re-

gards his own creditors, who were without lien or other claim on the note or judgments transferred, and he having parted with them on terms satisfactory to himself, his creditors are bound by the transaction.

5. That the debt due by Colt & Donaldson to the testator had not become the individual debt of William Donaldson, but remained, when paid, the debt of the said firm, and was rightly paid by Mr. Colt with his own funds, the firm being largely indebted to William Donaldson at the time, and the transactions being solely between Cowden and Colt, without the knowledge or participation of Donaldson in any way, cannot, under the circumstances, be charged against the legacy.

6. That the transactions regarding the Swatara Railroad stock, were not by William Donaldson in his individual capacity, nor for his own benefit, but on behalf of the company, to whom he has accounted for the stock transferred at its par value; and that the judgments assigned by John H. Cowden, and paid for by the said stock, cannot be charged against the legacy of Anna Maria Donaldson.

7. That under the evidence in this case, William Donaldson's individual note to the testator is not a charge against the legacy to his wife, nor is the assignment to him of the Northumberland county judgments.

The court below (Wilson, President) instructed the jury, "that if the transactions referred to by the foregoing points affected John H. Cowden and William Donaldson alone, and were not complained of by the other legatees and creditors of the testator, the principles here stated would apply; but where others are interested, (as in this case, the creditors of John H. Cowden,) they can and do complain, and have a right to prove the assets misapplied. The evidence on the former trial, and that now given, do not differ so as to change the aspect of the case then presented; and under the evidence and decision of the Supreme Court, 7 Watts & Serg. 407, we refuse the instructions requested by the plaintiffs' points." The court then charged as follows: "John Cowden, late of Northumberland county, by his last will, dated the 1st day of September, 1836, devised and bequeathed to his daughter, Mrs. Donaldson, as follows: 'To my daughter, Anna Maria, and her heirs and assigns, I bequeath all my plantation on the North Branch, about five miles above Northumberland; a small house and lot in Mooresburg; $3000; also, all my claim and demand against George Grant, of a mortgage entered against said Grant in Schuylkill county.' He also makes provision for his other daughters, his grandchildren, and great-grandchildren. After these bequests, he says, 'To my son, John H. Cowden, his heirs and assigns, I give and bequeath all the remainder of my estate, real, personal, and

mixed; he to pay all my debts, to pay my daughter Elizabeth, and all my other bequests.' Since the death of John Cowden, judgments were obtained against John H. Cowden, for his individual liabilities that were liens upon the interest he took in real estate under the will of his father, and for the payment of which, this real estate was sold. Out of the funds raised on these sales, Anna Maria, married to William Donaldson, and who was married before the date of the will, asks that the $3000, given her by the will of her father, shall be paid; and this issue is formed for the purpose of determining her right to payment out of the fund so raised by a judicial sale of the real estate of John Cowden, deceased, on judgments obtained by the creditors of John H. Cowden, and that were a lien on the real estate sold. The fund raised is more than sufficient to pay the legacies.

" The question raised by this issue, in the first place, is, whether the legacy of $3000 to Mrs. Donaldson was a lien upon the real estate out of which the fund for distribution was raised, and if so, whether the purchasers at the judicial sales take the estate discharged from this lien, and she can come in for payment of her legacy out of this fund, in preference to the creditors of John H. Cowden? These questions we decided on a former trial of this cause; that by the will, the legacy was a lien on the real as well as personal estate of which the testator died seised; that the purchasers at the sheriff's sales on the judgments obtained against John H. Cowden, took the real estate discharged from the lien of Mrs. Donaldson's legacy, and that she was entitled to payment out of the fund so raised from the sales so made, in preference to the lien creditors of John H. Cowden; notwithstanding personal assets of the testator, sufficient to discharge the debts of the testator and the legacies, came to the hands of the executor. In this the Supreme Court say there was no error; *so that the question remaining to be settled is, whether the legacy claimed by the plaintiffs is paid, or the executor has been guilty of a devastavit, to which William Donaldson, now seeking to recover the legacy, was a party.* John H. Cowden became liable for a large amount of money. For these liabilities he gave a mortgage to the Philadelphia Bank, on the 26th of March, 1841, for $34,742 94, on lands in Northumberland county, which was entered of record on the 7th of June, 1841, and at the same time a judgment bond for the same amount, which was entered in Northumberland county, on the 6th of November, 1841, for the amount to which it was reduced by a payment to $31,481. He gave a judgment to the Manufacturers and Mechanics' Bank of the Northern Liberties, for his liability to that institution, of $25,000, which was entered in Northumberland county on the 17th of June, 1841, and afterwards m

Lycoming county on the 15th of July, 1842. A judgment to the United States Bank for Ellis Lewis, entered in Lycoming county on the 10th day of May, 1841, for upwards of $2500. To the West Branch Bank, a judgment in Lycoming county, for $15,425.

These judgments were liens from the time of their being entered of record, and together binding all the real estate in which John Cowden had interest, in the counties of Northumberland and Lycoming, and for the payment of which the real estate devised to John H. Cowden, upon which the plaintiffs had a prior lien by the will of John Cowden, deceased, for the legacy they ask to recover on this issue, was sold. The personal assets of John Cowden, deceased, was the primary fund for the payment of his debts and legacies. They are a lien also on the real estate. But a devastavit of the personal assets by the executor, to which a legatee is a party, when the executor becomes insolvent, and creditors, and legatees, and persons interested are likely to suffer by it, will postpone his claim on the fund raised from the real estate to the liens of such other legatees, creditors, and other persons interested. Such is the decision of the Supreme Court; and the expressions here used will comprehend the creditors of John H. Cowden, who have their liens upon the land, as well as the creditors and legatees of John Cowden, deceased. By the testimony of William Forsythe, whom John H. Cowden spoke to when his creditors were about to press their claims in January, 1842, he was to go to Philadelphia for Mr. Cowden, to endeavour to get time for him from his creditors, and procure a loan of money for Mr. Cowden. He says he had a conversation with Mr. Donaldson before he went to Philadelphia, about Mr. Cowden's ability to pay his debts at that time, and make the arrangement with his creditors in the city, and effect a loan to pay the debts then pressing. The witness says, he knew of the judgment of the Manufacturers and Mechanics' Bank, of the Pennsylvania Bank, and of the Philadelphia Bank. That Mr. Donaldson knew of these judgments from what was said, or what he may have said to him. Donaldson had then a knowledge of Mr. Cowden getting into difficulties, as early as January, 1842. On one of these judgments, the real estate of Mr. Cowden was sold in Northumberland county, in July, 1842. To the August term of the court in Lycoming county, his real estate had been sold in that county. About this sale, a difficulty arose among the claimants to the fund, and the sale was opened and again sold on the 6th of February, 1843.

At the death of John Cowden, he had a note on William Donaldson for $1000, and two notes on the firm of Colt & Donaldson, of which firm William Donaldson was a partner, for $1000 each; and on the 22d of

November, 1842, which was subsequent to the property being sold the first time in Lycoming county, and subsequent to the absolute sale of the property in Northumberland county, William Donaldson, by arrangement with John H. Cowden, who was the executor of his father's estate, assigned to him at par sixty-five shares of stock in the West Branch Bank at Williamsport, in payment of this note. The bank at that time, and for several months previous, had suspended specie payments, and was not paying out any money for their own notes. We have no evidence of any sales of stock about that time; that the same year, but previous to this date, the bank had taken some stock of the cashier, Mr. Correll, at the par value, $25 a share, and some at $20 a share; and in the spring or summer of 1842 received stock from Mr. Cowden at par, to the amount of $2000 or $3000. Correll and Cowden were both indebted to the bank, and their stock was taken in payment. The notes of the bank had depreciated by the testimony of Reichly, in July of that year, to from 45 to 55 per cent. below par, and they were no better on the 22d November, 1842.

In April, 1842, John H. Cowden transferred several judgments of his father's estate, in Columbia county, amounting to $700, to William Donaldson, for Swatara Railroad stock, which he then subscribed for to said company. This stock was also depreciated. It is, however, alleged by the plaintiffs, and the fact is so proven, that this was not a purchase of stock from William Donaldson, of his own, but an original subscription of stock by Mr. Cowden to that company, and that it should not have any thing to do in the way of set-off against the plaintiff's claim. Mr. Donaldson settled with the company for this sum. It is in proof, that this company is largely indebted and unable to pay, and among its creditors is William Donaldson—to the payment of his claim this $700 was applied; that it was in fact paying him $700 of a debt that he held against a company that was unable to pay, or at least greatly in want of funds, and Mr. Cowden transferring a debt due his father's estate for stock that no witness has undertaken to say was at par. Mr. Cowden also, on the 27th of April, 1842, transferred a judgment of his father's estate against William Johnston and others, in Northumberland county, which, on the 9th of November, 1842, amounted to $398 12, for Tide Water Canal notes, that had become depreciated and of nominal value. These notes, the stock of the West Branch Bank and Swatara Railroad Company, Mr. Cowden has returned in his schedule of property, on his application for the benefit of the bankrupt act, which he made by petition, on the 15th day of December, 1842, less than a month after the transfer of the West Branch Bank stock to him by Donaldson. Mr. Cowden proceeded

with this application until his discharge under the act was finally decreed, on the 11th of July, 1843, by which proceeding these notes and stocks are transferred to the creditors and others interested, instead of the note of William Donaldson and the judgments assigned, by which the creditors, legatees, and others interested, are likely to suffer.   We see nothing in the testimony in relation to the transactions, so far as we have mentioned them, between Cowden and Donaldson, that would vary their character from what they were before us on the former trial, and upon which the Supreme Court say we should have charged the jury expressly that their transactions, appearing from the then evidence, constituted a devastavit on the part of the executor, to which William Donaldson was a party, and that, therefore, he cannot be allowed thus to carry away the property of the estate for a nominal consideration or for things of little value, but equity will follow them into his hands, and make him restore them when the executor becomes insolvent, and creditors and other legatees and persons interested are likely to suffer by it.   The arrangement of the two notes of Colt & Donaldson by William Colt, it would appear, William Donaldson was not privy to. We were, on the evidence at the former trial, of opinion, that if this arrangement took place between Colt and Cowden, to which transaction of settlement Donaldson was not participating, and it was a misapplication of the funds of the testator, it was to be visited on those who engaged in it, and, if not settled, to be accounted for as part payment of Mrs. Donaldson's legacy, and, so consented to by William Donaldson, it could not be set off in this suit against the legacy. In this the Supreme Court say we were in error, and should have instructed the jury that the transaction under the then evidence was a devastavit by Cowden, as well to the note of Donaldson alone, as to Colt & Donaldson, which was a debt of Donaldson's by the partnership arrangement, and which Colt could not settle otherwise than for him.   [Opinion of Supreme Court read.]   And if there is nothing in the evidence now, to distinguish this transaction from the shape in which it was before us at the former trial, we are bound to the opinion of the Supreme Court, and must give you the instruction that they say we should then have done.   On the former trial, Mr. Colt and Mr. Cowden proved that Donaldson had nothing to do with the settlement of the liability, and Colt, that the money he paid Cowden was his own, not Donaldson's. That he and Donaldson, in 1836, which was six years previous, had dissolved partnership ; that there was a balance of $2000 or $3000 coming to him; that the funds of the store were to pay the debts; that both he and Donaldson collected money from the books to pay the firm debts; that he calculated to charge Donaldson, when they settled, with

the debts he had paid; that the partnership books were left in the store, to which both had access, and that the balance on the settlement, that he paid Mr. Cowden in Tide Water Canal notes, was between $1300 and $1500. Now, in substance, the testimony as to the dissolution is the same, and the only matter to vary the view then given of this transaction is, that at the time Colt paid this money to Mr. Cowden, Donaldson, in payment of the debts of the firm, was in advance of Mr. Colt some $6000 or $8000, and that the debts on the books due the firm were not equal to the debts they owed, as Mr. Colt believes, with the additional testimony of Mr. Colt giving a note payable to Samuel Thompson for $1200, in discharge of a part of the indebtedness of Colt & Donaldson to the estate of John Cowden, deceased. Donaldson being in advance in payment of the partnership debts, and the debts due the firm on their books not being equal to their liabilities, does not so vary the case as to alter the decision of the Supreme Court upon the part of the transaction in relation to Mr. Cowden's taking the Tide Water Canal notes in payment of the liability of Colt & Donaldson to the estate of his father.

Of the amount of debts cancelled by the stocks taken by Mr. Cowden, and the Tide Water notes taken in payment, there is no dispute. And without taking the note of Samuel Thompson into consideration, they amount to more than the legacy, and being so, we instruct you, that the plaintiffs cannot recover.

*Hepburn*, for plaintiffs in error, cited, 11 Serg. & Rawle, 585 ; 4 Mad. Rep. 357 ; 2 Serg. & Rawle, 493 ; 9 Watts, 529 ; 4 Rawle, 179 ; 4 Rawle, 108 ; 2 P. Williams, 497 ; 2 Watts, 90 ; 10 Watts, 54 ; 1 Wh. 184 ; 11 Serg. & Rawle, 326.

*Greenough*, for defendant in error, cited Bank *v.* Donaldson, 7 Watts & Serg. 407, where one branch of this case is reported.

*Bellas*, same side.

*Jordan*, for plaintiffs in error, declined replying.

The opinion of this court was delivered by GIBSON, C. J.

There would be no hesitation in deciding that Donaldson's debt may be set off against his wife's legacy, were the question involved in the issue. He came before the court as a demandant of what he had a right to receive as his own ; and his demand of it, as his action would have done, made it his own so far as to let in a cross-demand as payment of it, yet not so far, according to Adams *v.* Lavender, 1 McClel. & Younge, 41, as to disappoint her right of survivorship, in the event of

2 B 2

his death, before final decree. Notwithstanding the indeterminate form of the issue which, pursuant to the slovenly practice which prevails where it was tried, was joined by pleading non assumpsit to an action for money had and received, we are able to discern that it was directed to try as matter of *fact* the fairness of the dealings between Cowden and Donaldson. Certainly, the jurors were not empannelled to try the question of *law*, whether Donaldson's debt could be set off against his wife's legacy. That question was to be for the court, when the facts should be disposed of; and it was irregular to moot it in the trial of the issue. It is not the least evil of these hotch-potch issues, that they produce infinite perplexity and vexation in attempting to ascertain what has been established or subverted by the verdict; but they confound all legal distinctions in the apprehension of the counsel, till they at length know not what they are about: so true it is, that he who forgets the forms of the law will soon forget its principles. Unquestionably, no more was proper to be tried on this issue, than the mala fides imputed to Cowden and Donaldson, and the value of the consideration that passed between them. If their dealings were honest, Donaldson was entitled to the verdict; if they were collusive, he was not; but he would be entitled, at the final decree, to an abatement of the set-off to the value of the property given by him; and, for that reason, it was the business of the jury to assess it. If the notes were given up at a sacrifice to favour Donaldson, Cowden was guilty of a devastavit, and his father's creditors, or legatees, could follow them into Donaldson's hands as subsisting securities. But it has been urged, that none else could do so; and that, as the debts and legacies bore no proportion to the bulk of the estate, Cowden, the residuary legatee, could part with the property absolutely as regards his own creditors. The argument would be unanswerable if he were not insolvent at the time; but if, being so, he gave up the notes to an accomplice in a meditated fraud, he committed, not only a devastavit, as regards his father's creditors, but a fraud by the 13 Eliz. as regards his own, and the notes might be enforced for the benefit of either class. No matter whether the transaction were with Colt, as Donaldson's partner, or directly with Donaldson himself. If the design was to part with the notes at an undervalue, it would be a fraud in Donaldson to insist on the bargain, though his ignorance of the transaction might be a circumstance in determining the question of intention. Nor would it vary the case, that the stocks which Cowden received at par were parted with by him at par. An accidental turn cannot purify a transaction which was impure in its origin. The question was, whether the purchase of the stocks and notes was a contrivance to favour Donaldson, by giving up to him a

part of Cowden's estate at the expense of his creditors; and, whatever the evidence may have been, it was exclusively for the jury. No exception can be taken to any abstract principle ruled below; but, in following out the opinion of this court on a state of the case not exactly the same, the direction was, perhaps, too stringent. Inadequacy of consideration, without collusion, however it may be evidence for a jury, is not enough to bring such a transaction within the purview of the statute; and the question ought to have been left as oné óf actual, not legal fraud. The same principle is applicable to Cowden's transfer of his father's judgments. If these transfers were collusive, he ought, at the proper time, to be charged with the value, less the worth of the property given in return, which it is the province of the jury to estimate. But these are considerations which mainly belong to the final decree.

Judgment reversed, and venire de novo awarded.